<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL SYLVAIN, : **Hon. Joel A. Pisano**
:
Petitioner, :
: Civil No. 11-3006 (JAP)
v. :
:
ERIC HOLDER, et al., : <u>OPINION</u>
:
Respondents. :

**APPEARANCES**:

    MICHAEL SYLVAIN, 3238419/F-2
    Monmouth County Correctional Institution
    1 Waterworks Rd.
    Freehold, New Jersey 07728
    Petitioner <u>Pro</u> <u>Se</u>

    ALEX KRIEGSMAN, Assistant United States Attorney
    PAUL J. FISHMAN, United States Attorney
    970 Broad Street, Suite 700
    Newark, New Jersey  07102
    Attorneys for Respondents

**PISANO**, <u>District Judge</u>

    Michael Sylvain, confined at the Monmouth County Correctional Institution in Freehold, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his pre-removal-period mandatory detention, pursuant to 8 U.S.C. § 1226(c), in the custody of the Department of Homeland Security ("DHS"). Respondents filed an Answer and several exhibits. For the reasons expressed in this Opinion, this Court finds that Petitioner's detention is governed by 8 U.S.C. § 1226(a), grants the Writ of Habeas Corpus, and directs that the Immigration Judge conduct a bond hearing for Petitioner pursuant to 8 U.S.C. § 1226(a)(2).

## I.  BACKGROUND

Michael Sylvain, a native and citizen of Haiti, challenges his detention in the custody of DHS.  Petitioner emigrated to the United States as a lawful permanent resident from Haiti in 1988.  Between 1994 and 2007, Petitioner was convicted of various drug and other offenses, in the States of New York and New Jersey.  Although it is not entirely clear from the Petition and Answer, it appears from the documents attached to the Answer that Petitioner's latest conviction occurred in New York on October 4, 2007, when he was convicted of criminal possession of a controlled substance and sentenced to conditional discharge.  (Docket Entry No. 7-1, pp. 49, 95.)

On April 12, 2011, DHS took Petitioner into custody pursuant to 8 U.S.C. § 1226(c).  (Answer, Docket Entry No. 7 at p. 6.)  Although Respondents did not file the Notice to Appear with the Answer, the "Record of Deportable/Inadmissible Alien" dated April 12, 2011, states that "[a]n NTA was prepared on 08/31/2009 by NYC/CAP charging him under Section 237(a)(2)(A)(iii) for aggravated felony and Section 237(a)(2)(B)(i) of the INA for controlled substance conviction."  (Docket Entry No. 7-1, p. 49.)  Deportation officer Judith C. Almodovar served the Notice to Appear upon Petitioner on April 12, 2011, together with a notice of custody determination (not attached as an exhibit).  (Docket Entry No. 7-1, p. 50.)  Petitioner has been in pre-removal period custody since April 12, 2011.  To date, no order of removal has been issued.

In the Petition, Petitioner argues:  (1) he is not subject to mandatory detention under 8 U.S.C. § 1226(c), and his detention is instead governed by 8 U.S.C. § 1226(a), because he was not taken into DHS custody when he was released last from criminal incarceration, see Saysana v. Gillen, 590 F. 3d 7 (1st Cir. 2009), and (2) he is entitled to be released, see 8 U.S.C. § 1226(a), on bond because he does not pose a danger to the community or a flight risk.

Respondents concede that DHS did not take Petitioner into custody until years after he was released from criminal incarceration for an offense enumerated by 8 U.S.C. § 1226(c). They urge this Court to defer to the Board of Immigration Appeals' interpretation of 8 U.S.C. § 1226(c) in Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001).

## II. DISCUSSION

Petitioner argues (in part) that he is not subject to mandatory detention under 8 U.S.C. § 1226(c) because DHS did not take him into custody when he was released from criminal incarceration (presumably in 2007), but delayed until April 12, 2011. The government argues that this Court should defer under Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), to the BIA's determination in Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001). Specifically, Respondents argue that this Court should dismiss the Petition because, "under the BIA's current reading, ICE has mandatory-detention authority [with] respect to an alien who has been released from custody relating to an offense enumerated in INA § 236(c)(1) after October 9, 1998, and need not invoke this authority immediately." (Docket Entry No. 7, p. 11) (citations omitted). Thus, the question in this case is whether the mandatory detention provision set forth at 8 U.S.C. § 1226(c) applies only if the alien is taken into custody immediately when he or she is released from a criminal custody, the basis for which is one of the offenses listed in § 1226(c)(1)(A)-(D).

### A.   Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his mandatory detention is not statutorily authorized by 8 U.S.C. § 1226(c) and violates his due process rights. See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir. 2005).

**B.     Exhaustion**

The government has not raised failure to exhaust administrative remedies as an affirmative defense. Although 28 U.S.C. § 2241 contains no exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981). The Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F. 3d 757, 761-62 (3d Cir. 1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988). However, where the petitioner is challenging an agency's precedential interpretation of a statute, the purposes of exhaustion would not be served and exhaustion is not required. See Woodall v. Federal Bureau of Prisons, 432 F. 3d 235, 239 n.2 (3d Cir. 2005). In this case, exhaustion is not

required because the BIA has already interpreted § 1226(c)(1) as requiring detention in a case like Petitioner's.  See Matter of Rojas, supra.

**C.     Relevant Statutes**

The statutory authority to detain an alien depends on where the alien is in the removal process.  Section 1226(a) provides the Attorney General with discretionary authority to detain or to release aliens on bond or conditional parole pending the outcome of the removal proceeding. Section 1226(c)(1) requires the detention of specified criminal aliens pending the outcome of the removal proceeding.  Section 1231(a)(2) mandates detention during the removal period established in § 1231(a)(1)(B), and § 1231(a)(6) provides the Attorney General with discretionary authority to detain aliens beyond the removal period, or release them under supervision.  See Diouf v. Mukasey, 542 F. 3d 1222, 1228 (9th Cir. 2008).

Section 1226(a) authorizes the Attorney General of the United States to issue a warrant for the arrest and detention of an alien pending a decision on whether the alien is to be removed from the United States.  See 8 U.S.C. § 1226(a).  Specifically, § 1226(a) provides:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) of this section and pending such decision, the Attorney General –
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on –
>
> > (A) bond of at least $1,500 . . ; or
> >
> > (B) conditional parole; but

>  (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization.

8 U.S.C. § 1226(a).

Section 1226(b) provides that "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b).

Section 1226(c) mandates detention of specified criminal aliens during removal proceedings. See 8 U.S.C. § 1226(c). Section 1226(c) provides in relevant part:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who -
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release

> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c)(1) and (c)(2); see Demore v. Kim, 538 U.S. 510, 527-28 (2003).

"[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2) requires the Attorney General to detain aliens during the removal period: "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2). "The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231 (a)(1)(C).

The removal period does not begin until **the latest** of several events occurs, one of which is the date the removal order becomes administratively final. See 8 U.S.C. § 1231(a)(1)(B). Specifically, § 1231(a)(1)(B) provides:

> The removal period begins **on the latest** of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

7

> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis added).

If DHS does not remove the alien within the removal period, then § 1231(a)(6) authorizes the Attorney General to either release or continue to detain the alien. Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6); see Zadvydas v. Davis, 533 U.S. 678 (2001).

**D.      Statutory Authority for Petitioner's Detention**

In this case, there is no dispute that Petitioner's removal period has not begun since his removal order is not administratively final. See 8 U.S.C. § 1231(a)(1)(B). Accordingly, Petitioner's detention is governed by either § 1226(a) or 1226(c). Petitioner argues that his detention is governed by § 1226(a) (which authorizes release on bond) because § 1226(c) does not apply where an alien is not taken into DHS custody until several years after his release from incarceration for an offense listed in § 1226(c). The government argues that his detention is mandated by § 1226(c) (which does not permit release on bond) because this statute mandates detention so long as the alien is released from incarceration for an offense listed in § 1226(c) any time after October 8, 1998. Specifically, the government argues that this Court is required to defer under Chevron to the BIA's interpretation of § 1226(c) in Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001). In Matter of Rojas, the BIA determined that, where Rojas was released on parole for an offense covered by § 1226(c)(1) two days

8

before he was taken into immigration custody, § 1226(c)(1) applied, even though Rojas was free in the community for two days.

In Matter of Garcia Arreola, 25 I.&N. Dec. 267, 270 (BIA 2010), the BIA ruled that § 1226(c) applies only where the alien has been released from custody for one of the offenses enumerated in that section after October 8, 1998. The BIA determined that Garcia Arreola was not subject to mandatory detention because he was released from non-DHS custody resulting from assault crimes which were not offenses under § 1226(c)(1). In a footnote, the BIA states that it is not receding from Matter of Rojas, 23 I.&N. Dec. 117.[1]

If "Congress has directly spoken to the precise question at issue," courts and the agency "must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43. In the immigration context, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." INS v. Cardoza-Fonseca, 480 U.S. 421, 447-48 (1987) (quoting Chevron, 467 U.S. at 843 n. 9). Deference to an agency's interpretation of a statute "is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 600 (2004).

---

[1] This Court notes that in Matter of Garcia Arreola, the DHS "urge[d the BIA] to interpret the statute to regard mandatory detention under section 236(c)(1) of the Act as arising from a post-TPCR 'release' when the release is from custody based on an underlying criminal conviction that gives rise to the qualifying inadmissibility or deportability set out in sections 236(c)(1)(A)-(D) of the Act." Garcia Arreola, 25 I.&N. Dec. at 271.

This Court agrees with the First Circuit that Congress clearly intended to give the Attorney General the authority to detain an alien under § 1226(c)(1) only if the Attorney General takes the alien into custody at the time the alien is released from incarceration resulting from one of the offenses enumerated in § 1226(c)(1). In Saysana, Massachusetts released Mr. Saysana in 1991 from a five-year sentence for a 1990 conviction for indecent assault and battery; in 2007 DHS took him into custody under 8 U.S.C. § 1226(c)(1) and initiated removal proceedings charging that the indecent assault and battery conviction qualified as an aggravated felony rendering him removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). See Saysana, 590 F. 3d at 9. In a precedent decision, Matter of Saysana, 24 I.&N. Dec. 602 (BIA 2008), the BIA ruled that § 1226(c)(1) required Mr. Saysana's detention because he was released from state custody in 2005 when the charge of failing to register as a sex offender was dismissed, and he had committed an offense listed in § 1226(c)(1) in 1990. The District Court granted a writ of habeas corpus and the First Circuit Court of Appeals affirmed, holding that 8 U.S.C. § 1226(a) governed Mr. Saysana's pre-removal-period detention because § 1226(c)(1) on its face did not apply where Mr. Saysana was not taken into immigration custody until 16 years after he was released from incarceration for the offense listed in § 1226(c)(1):

> Indeed, if the reference to "when the alien is released" is read to encompass *any* release from *any* non-DHS custodial setting after the expiration of the TPCR, that phrase is completely disjointed from the text that precedes and follows it. As we have noted, the preceding text specifically enumerates offenses relating to removability; the subsequent reference to the "same offense" is only sensibly read to relate back to the aforementioned statutorily listed "offense[s]." Absent a clear direction in the text to read multiple uses of the same term to carry different meanings, we shall not do so. Rather, we shall read the term uniformly throughout the provision.

Saysana, 590 F. 3d at 14-15 (footnotes omitted).

Most District Courts considering the issue have rejected the BIA's interpretation of § 1226(c)(1) in Matter of Rojas.  See, e.g., Louisaire v. Muller, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) ("Matter of Rojas, however, is wrong as a matter of law and contrary to the plain language of the statute.  The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) *immediately* upon their release from criminal sentences for those *same offenses*, even if they are still serving part of their sentence out in the community, under 'parole, supervised release, or probation'"); Burns v. Cicchi, 702 F. Supp. 2d 281 (D.N.J. 2010) (holding that § 1226(c) does not apply where alien was taken into immigration custody more than 15 years after release from incarceration for covered offense); Dang v. Lowe, 2010 WL 2044634 (M.D. Pa. May 20, 2010) (holding that § 1226(c)(1) does not apply where alien was not taken into immigration custody until 10 years after release from incarceration for an enumerated offense); Khodr v. Adduci, 697 F. Supp. 2d 774, 774-75 (E.D. Mich. 2010) ("Because the Court finds that the statute at issue clearly and unambiguously requires the Attorney General to take into custody certain aliens without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c), the Court does not defer to the Board of Immigration Appeals' decision to the contrary in Matter of Rojas"); Scarlett v. DHS, 632 F. Supp. 2d 214, 219 (W.D.N.Y. 2009) ("the statute does not apply when the alien was not taken into immigration custody at the time of his release from incarceration on the underlying criminal charges"); Waffi v. Loiselle, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007) ("the mandatory detention statute . . . does not apply to an alien . . . who has been taken into immigration custody well over a month after his release from state custody" for an enumerated offense).

Respondents argue that § 1226(c) is ambiguous (and this Court should therefore defer to the BIA's interpretation under Chevron) first because one plausible reading of the statute is that the clause "when the alien is released," modifies only the verb phrase "shall take into custody." The statute commands: "The Attorney General shall take into custody any alien who – is inadmissible . . . or deportable [by reason of having committed an enumerated offense], when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1). However, even if the "when the alien is released" phrase modifies the verb, Petitioner is still not covered by § 1226(c) because the statute commands that the government "shall take [the alien] into custody . . . when the alien is released," and Respondents did not take Petitioner into custody until several years after he was released.

Respondents also argue that the statute is ambiguous because it is plausible that the word "when" means "after," and, in that case, the statute commands that the government "shall take the alien into custody after the alien is released." This Court rejects the argument that "when" means "after." This Court holds that Congress clearly intended to give the Attorney General the authority of mandatory detention under § 1226(c)(1) only if the government takes the alien into custody immediately when the alien is released from custody resulting from one of the offenses enumerated in § 1226(c). See, e.g., Matter of Rojas, 23 I.& N. Dec. at 131 ("The legislative mandate to detain is limited to those aliens who are taken into immigration custody when released from criminal incarceration" for an offense enumerated in § 1226(c)(1)) (Rosenberg, dissenting). Because the Attorney General did not take Petitioner into custody when he was released from incarceration in approximately 2007 (or earlier), but waited to take him into custody until 2011, Petitioner is not

subject to mandatory detention under § 1226(c)(1). Instead, Petitioner's pre-removal-period detention is governed by 8 U.S.C. § 1226(a), which authorizes the Immigration Judge to release him on bond.

This Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a)(2), within 10 days of the date of the entry of the Order accompanying this Opinion.

### III.  CONCLUSION

For the reasons set forth above, the Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2)                                                                          .

/s/ JOEL A. PISANO
**JOEL A. PISANO, U.S.D.J.**

DATED: June 28, 2011